COMMONWEALTH *vs.* SCHOOL COMMITTEE OF THE BLACKSTONE VALLEY VOCATIONAL REGIONAL SCHOOL DISTRICT. March 19, 1982. The Commonwealth by this complaint (brought in behalf of its Board of Education and the Department of Education) seeks to require the defendant school district (the District) to pay for the special education (G. L. c. 71B) of one Lynden, alleged to be one of its enrolled students. There is a statement of agreed facts. The District's motion for summary judgment was granted. The Commonwealth has appealed.

Lynden, born November 10, 1961, was enrolled in the District's school in September, 1975, and attended it through his freshman, sophomore, and junior years until June, 1978. In the summer of 1978, Lynden was placed in the custody of the Department of Youth Service (DYS). During that summer, a member of the District's staff was informed by Lynden's mother by telephone that Lynden (absent twenty-five times during his junior year) was working and would not return to school. He did not appear at school in the school year starting September, 1978. The District's

administrators did not learn until late October, 1978, that he was in the custody of DYS.

About then, a DYS employee referred Lynden to the Uxbridge public school for an evaluation and the development of a special education plan for him. The Uxbridge school committee, because Lynden was not enrolled in its school, denied any legal liability. The District also denied liability, asserting that Lynden was no longer enrolled in its school. The Uxbridge administrators, however, agreed to perform the special education evaluation in which the District declined to participate. The plan then developed was to place Lynden in the regional adolescent program at Medfield State Hospital where he remained from March to August, 1979. In September, 1979, Lynden returned to the District's school for one day only.

In September and October, 1979, the District's school committee informed Lynden and his parents (see G. L. c. 76, § 18, as appearing in St. 1973, c. 915) that they could meet with the committee to discuss the reasons for Lynden's leaving school, his rights under the special education regulations, and all program options available to him in the school system. No such notice of opportunity to discuss was sent to Lynden's parents by the District during the 1978-1979 school year. The North Shore Consortium, which operates the Medfield Regional Adolescent Program under contract with the Department of Mental Health (but which has no direct contract with the District affecting Lynden), is owed $5,625 for Lynden's participation in its program from March through August, 1979.

The Department of Education has prescribed regulations (603 Code Mass. Regs. [CMR]) pursuant to G. L. c. 71B, § 2. The parties appear to be in agreement that the District is liable for Lynden's expenses in the Medfield program if he was "enrolled" in the District's school in 1978 and 1979 within the meaning of 603 Code Mass. Regs. 202.2 (1979), which reads in part: "[T]he school committee of each . . . regional vocational school district shall be solely responsible for satisfying all requirements of these regulations, unless exceptions are otherwise specified, for all children enrolled in the schools under the control and supervision of such school committees." A related section (603 Code Mass. Regs. 339 [1979]) is to similar effect. The Department, contrary to the trial judge's determination "that 'enrollment' in a school is an annual event," contends that enrollment, once established, at least for purposes of special education programs (G. L. c. 71B), is a "continuing" relationship between the school and the enrollee. Unlike the trial judge, we perceive nothing in G. L. c. 72, §§ 2, 2A, and 8, which is inconsistent with the Department's position that enrollment continues until it is clear that a particular child "has withdrawn from . . . school without intention of returning." See § 8, as amended through St. 1973, c. 1073, § 1A. That view also is consistent with the broad policy behind the "special education" program set

out in St. 1972, c. 766, § 1. See also G. L. c. 71B, § 3. For general discussion of various aspects of the "special education" program and of the departmental interpretation of the pertinent statutory provisions, see *Amherst-Pelham Regional Sch. Comm.* v. *Department of Education,* 376 Mass. 480, 491-492 (1978). Chapter 72, §§ 2 and 2A, merely provide for annual reports of enrolled students of different categories and do not have any direct bearing on the issue of *which* students shall be regarded as enrolled as of a given time. We think that the most pertinent statutory provision is G. L. c. 76, § 18, which displays a clear legislative purpose that no student shall leave public school permanently (before completing the regular course of public education) without being given written notice of the opportunity for the student and his parents to consult with the authorities of the school he or she has been attending about the "reasons for the student permanently leaving school and [about] alternative educational or other placements." Such consultation is obviously of particular importance to special needs students. We hold that, on the agreed facts, the contentions of the Department were correct and that Lynden continued to be enrolled in the District's school until there had been compliance with c. 76, § 18.

The judgment is reversed. The case is remanded to the Superior Court for further proceedings consistent with this opinion, including a declaration that the District is responsible for Lynden's 1979 tuition expenses at the Medfield program, and for any further determinations necessary because not dealt with by the statement of agreed facts (e.g. the proper payee of the amount to be paid by the District) if such matters cannot be agreed by the parties.

*So ordered.*

*Maureen L. Fox,* Assistant Attorney General, for the plaintiff.
*Kevin R. Sherin* for the defendant.